Case call for oral argument is People v. Roger Clay, and I'm going to let him re-read. Thank you, your honors. May it please the court. Counselor, my name is Lawrence O'Neill. I represent Roger Clay in this cause. In 1997, Mr. Clay was found guilty of the 1995 death of Tiffany Kerr, 2-year-old Tiffany Kerr, in following a jury trial. This appeal is from the denial of a motion for leave to file a successive post-conviction petition. At the jury trial, the evidence showed that 2-year-old Tiffany Kerr died of head injuries in January 1995. The state's theory of the case was that the child suffered her fatal injuries during the two-hour period that Clay was a sole adult caretaker, between 12 p.m. and 2 p.m. The child's mother, Rosa Karen, was alone with the child after 2 p.m. and stayed with her until she tried to wake the child up at 5.45 p.m. Two experts testified for the state and one expert for the defense. All three experts testified that the child's injuries and symptoms were consistent with having been caused by either shaking or blunt trauma. The significant difference of opinion from the experts involved the time that the injuries occurred, how long after the injury would the child live, and the timing of the manifestation of the child's symptoms, because when the symptoms manifested determined when the injuries occurred, when Clay was with the child or Rosa Karen was caring for her. Regarding the present appeal, Clay filed a motion for leave to file a successive petition. Appointing counsel subsequently filed an amended motion and then filed a second amended motion for leave to file a successive petition. Arguing regarding recent scientific and medical theories that question the reliability and validity of shake and bathe syndrome. The trial court denied Mr. Clay's... Wasn't the basis of your supplemental expert material the question of timing of the syndrome when the syndrome might have started and the timing involved which would reflect on the possibility of actions other than what were the focus of this trial, but would that go to the probability and the credibility of the witnesses as to events that they claim actually occurred? Your Honor, the amended motions attacked the medical opinions that were presented at trial based upon the fact that true, the timing of the injuries incurred was a critical issue for the trial. But did they attack the existence of shake and baby syndrome, or did they attack the time frame possibility when the actions resulting in that could have occurred and the length of time in which the victim of such actions might be viable? Your Honor, they attacked both. The timing issue involved and the basic reliability and validity of shake and baby syndrome. In attacking that, the reliability and the validity of shake and baby syndrome, counsel attached two articles that both addressed the question of the timing of manifestation of injuries regarding shake and baby syndrome and the general theory of the questions involved in the medical and scientific communities. So I'm presenting here, Your Honor, I submit here that even though the general idea that shake and baby syndrome is no longer commonly accepted in the scientific medical communities was not an issue at the trial where the timing of when the injuries occurred wasn't the main issue, here I submit that they are both related and that both issues are represented with the amended motion. And if I can take up that idea, Your Honor, the question of the timing is particularly relevant if in the context of the general criticism or recent findings or medical opinions about shake and baby syndrome because of the new opinions regarding shake and baby syndrome open up the possibility of when injuries occur to a child who suffers from head injuries. The article stated that a child with fatal head injuries may have a lucid interval for as up to 72 hours before the symptoms manifest and death occur. Now that is a general criticism, general findings of the medical experts who are questioning the validity of shake and baby syndrome, but particularly after this case, even though that 72-hour window perhaps was not relevant to the defense that Clay presented at trial, it does question the reliability of a jury verdict that was based upon medical theories that are now a question. And in this particular context, the lucid interval of 72 hours creates possibilities that the child was injured before the very narrow two-hour period that Mr. Clay had cared for the child. And that's important, too, because the state had to narrow the time period when the injuries occurred to this two-hour period that Mr. Clay had exclusive caretaking of the child. Well, if the general theories of opinions, recent opinions of shake and baby syndrome open that time period up, even though that theory of the case was not presented at trial, it certainly questions the resulting verdict that was based upon medical theories that the state presented that now are questions about medical and scientific communities. To what extent did the trial court, in denying the subsequent post-conviction petition, examine these articles in your argument? Well, Your Honor, primarily, not considerably. Was there a hearing or was it just were the articles submitted with the motion or what? There was a hearing. Did you flesh out the procedural? There was a hearing. Clay filed a pro se. Right. The state's motion to dismiss Mr. Clay's motion and included in the hearing also addressed the motion for new trial based upon newly discovered evidence that involved the new theories, new opinions regarding the validity and reliability of shake and baby syndrome. So there was a hearing on that. And I'm pretty sure, Your Honor, that the judge's consideration was limited, for the most part at that hearing, to whether the motion for a leave to file a successive petition established the cause and prejudice component to be allowed. Now, within that context, Your Honor, the judge ruled that this evidence could have been presented in Mr. Clay's earlier post-conviction proceeding. So if I recall correctly, I don't want to misrepresent the court, there was very limited analysis regarding the medical opinions that were included in the articles that was attached to the motion and mostly pertained to whether this evidence could have been raised in the earlier proceedings. So I'd like to frame this posture here of the case within the framework of the cause and prejudice analysis for a petitioner being granted leave to file a successive post-conviction petition. And I urge this court to analyze this case within those two components, cause and prejudice. I mean, one article was a policy article from Reason Magazine, so I'm not going into that. But the other was a review of the scientific literature, conclusions based on that review. I haven't had a chance to look at the article itself yet. To what extent did the literature, the peer-reviewed literature that that article reviewed exist or was in the realm of the scientific community prior to or at the time that this case was tried on its merits? First, Your Honor, the article was published in 2009. Right. Yes, Your Honor. And analyzed findings that occurred in recent, in the years immediately preceding 2000. I'm not saying that there was no questioning of shaking baby syndrome before the year 2000. Mr. Clay filed his motion in 2000. I'm not saying there was nothing, no questioning about it. But I think the articles, fairly to say that the articles demonstrated that the theory has developed and could become more persuasive in the years following the year 2000, that it was a relatively recent issue pertaining to the validity of shaking baby syndrome. You can finish your sentence. Go ahead. That's all I have for now. Okay. Thank you. Thank you, Counsel. Counsel? Thank you, Your Honor. May I please report, Counselor? I agree with Mr. O'Neill. The procedural setup here was a motion to dismiss based on contention that the cause of prejudice test has not been met for this allegation. There was no evidentiary hearing involved, so it became really strictly a legal question whether or not the defendant met that initial burden, if you will, to allow him to proceed on his claim. And it's really under that kind of legal framework that the appeal here sort of proceeds. I want to start, even though the cause of prejudice test, I'm going to kind of start back with the prejudice. The trial in this case, and I do note that there was some testimony actually at the trial that there was an acknowledgment that the shaking baby field was still kind of in flux, if you will, about various opinions. I do think that there are two important points to make here. Number one, the defense theory was that, to counter the state's theory, the state had a basic argument was that when this child was alone with the defendant is when this happened with Hathaway and her. And that the expert testimony for the defendant, Dr. Kirshner, said that basically given the rapidity of onset of respiratory distress as a result of the cerebral damage, she would stop reading the dead in a much shorter time frame than what the state was putting out. So therefore, it had to have occurred at a time when the defendant was not at home and that the child was alone with Rosa after Ms. Hughes had left. So you'll see that from the record. But that was the defense theory. So when we look at this from a prejudice standpoint, if we take the proposition in the articles that shaking baby syndrome actually expands the time in which a person becomes symptomatic, it's not necessarily consistent with the defense theory. In fact, it could be, if anything, it could help the state or remain, but then it doesn't certainly advance the defendant's case. But I think more important than any of that is that this really isn't a shaken baby case. The cause of death that was testified to by both the state's expert, Dr. Mary Case, and the defendant's expert was that this child died of basically a broken skull, if you will, a blunt force trauma to the head. And they asked, while there was discussion of the shaken baby syndrome, when you look at it from the way it came out, it was brought out in a way I think is sort of parallel to the symptoms. And I think Dr. Case testified there, well, you would see these symptoms that almost really shook this baby really hard. But her diagnosis or her expert testimony was that this child died of a blunt force trauma to the head. That's what caused the significant brain damage that this child ultimately succumbed to. And that was agreed to by the defendant's expert, and there was no dissension between the two. The state got up there and closed the argument and said, this is not a shaken baby case. This is a case where the kid was batched in, more or less. And so I don't know that the shaken baby articles that the defendant has in this really advance anything, because when you read those, when you read at least the larger article, which sort of collates several different medical journals and synopsizes them, I think to allow the author to make a point, is that courts are too quick to attribute symptoms to subdural hematomas as a result of simply shaking, when oftentimes they may be resulted from things like blunt force trauma. What about the evidence that there was a shift in brain positioning? Was that also related to blunt force trauma? Yeah, I don't think that the case ever testified that this baby was shaken. Her testimony was it was blunt force trauma. There was agreement that that was the cause of death of this child. Okay, and was there testimony in the record that blunt force trauma could result in this reconditioning of the brain? That was why the shaken baby syndrome testimony came out, because there was an analogizing of the type of symptoms that you see in shaken baby syndrome, the hematomas and the rotational shear of the brain. So I think that that sort of underscored the state's point that this is not a characteristic shaken baby case. This is a child that was attacked physically in terms of impact trauma. And I think that's an important consideration, because I think that the law review articles are on point, as I read them, and I'm not an expert on this. So, and again, I go on with Dr. and Professor Turkheimer's sort of synopsis of these articles, is that there is some question about the validity of shaken baby syndrome as being the principal cause of subdural hematoma, when those types of injuries may be more likely caused by secondary or other factors, of which I think we would all agree blunt force trauma of the head, as Dr. Case testified to. In fact, Dr. Case was quoted by Professor Turkheimer as one of the individuals that she referred to as causing these symptoms and being the cause of death. So I'm not sure from a prejudice standpoint whether this information, whether it was available or not, would change anything, because I don't think it was alleged that this was a straight-up shaken baby case, which is what I think these articles are geared towards. So your position, you don't dispute this was a 2009 article based on a medical review and analysis of recent articles. So if I understand your position, your position is, I mean, it would be physically impossible to introduce that, that that could have been introduced at trial on appeal, but it's not relevant because the experts agree that the cause of death was blunt force trauma. Well, right. And like I said, I'm sort of moving backwards in this. I'm starting with sort of the if we accept that this is valid evidence that would meet the cause standard, that this is something new. Well, wouldn't an expert in civil or criminal trials be allowed to use and refer to and be cross-examined on a professional literature review of that particular discipline that the person was testifying about? I mean, you know, the article in Reason Reason is a policy journal, and they're advocating a position, but the other is a scientific analysis of scientific articles, and it's appropriately- I disagree. I mean, the reason I disagree is because it's not a scientific examination. It's no more a scientific examination than if you or I went to the SIU Law School or went to the SIU Library, pulled up medical journals, collated them into something, and then drew a conclusion. It's not medical anything other than someone knows how to read and synopsize other articles. So it's sort of a secondary importation of selected pieces, which I think meets Dr. and Professor Turkheimer's broader goal, I think, is to question the validity of shaken baby verdicts. And that's part of my principal problem with what we have here is that it's not medical. It's not geared towards this case or the facts of this case. The defendant cites a Wisconsin case, and I think if you look at that, where the court had ordered a new trial based upon expert testimony, that questioned the validity of the shaken baby syndrome. Now, that was a shaken baby case. That's one distinction. But the other thing is there is that you have medical testimony that was provided at NAMM, was both in court and substantive with regards to the shaken baby syndrome, but also is correlated to the defendant's case in particular. This is just basically copying an article, sticking it in there, and calling it new evidence. But it's not evidence of anything. It's not affidavit. It's not medical testimony. It's not medical related to this particular defendant. It's just a larger article. So I don't think that that meets the cause standard because, you know, or would we meet the evidence affidavit supplement requirement of post-conviction hearing in that sense of it as well? I don't even know if you need to get to that because I do think that from the prejudice standpoint, I just think both on the defense theory and the fact that this is really not a shaken baby case per se, the defendant argues that, well, Dr. Case sort of muddied the water because there's all this discussion about shaken baby syndrome. Be that as it may, Dr. Case made a conclusion about lone-force trauma. The medical expert from the defendant made that conclusion, and the state argued that this is a lone-force trauma case. So I think it's abundantly clear that whatever confusion the state may have infused in this case by talking about shaken baby syndrome I think has more to discuss the ideology and the symptomology of this type of shaken baby syndrome as it relates to the effects on this child in this case. This isn't a shaken baby syndrome case, and therefore it's whatever else the defendant may present with regard to shaken baby syndrome doesn't advance any particular argument from the defendant in terms of the trial. Thank you for your time. Thank you, counsel. Counsel? Your Honor, regarding the cause component and the question whether the shaken baby materials were available at the time of the trial and the direct appeal of the first post-condition petition, I urge Your Honor to consider the findings of the Edmonds v. Wisconsin case that is cited where that court states that the bulk of evidence regarding shaken baby syndrome occurred in the last 10 years, and that was a 2008 opinion. But also the Edmonds court held that recent developments in the research and the literature regarding shaken baby syndrome that challenges medical opinions that were presented at Edmonds' trial regarding shaken baby syndrome is newly discovered evidence that could not have been raised in the earlier proceedings. Is this a shaken baby case or a trauma case? I can't deny that the experts did testify that the primary cause of death was a trauma case. But, again, the State presented evidence from their experts that essentially the injuries that the child suffered could have been caused either by shaking or by trauma. So the State presented this theory of shaken baby syndrome and introduced it into the trial, and it was part of the State's case. And that basis of the State's case is what has been questioned by recent opinions regarding the validity and reliability of shaken baby syndrome. And the totality of that evidence and both theories, it allows the State to have, perhaps, alternate sources of the injury, both shaking and trauma. Are you contesting that there was damage to the skull, that there was a broken skull? No, Your Honor, I am not. But I'd like to encourage the court, again, to consider that this is a motion for leave to file a successive post-conviction petition. In the Edmonds case, there was an evidentiary hearing on the question of the validity and reliability of shaken baby syndrome when six experts testified in that regard. This is just the shortcomings of the articles that were submitted with the motion. This is an early stage. This is a stage to be able to allow Mr. Clay to file a post-conviction petition. So this inquiry should be limited to the cause of prejudice component for purposes of a motion to file with obtaining the court to file a successive petition, and perhaps then he would have the opportunity to present additional expert testimony regarding this particular case, these particular injuries, and how experts who analyze in shaken baby syndrome would consider the evidence that was presented at trial in light of the new theories and new opinions regarding the validity and reliability of shaken baby syndrome. That's all the questions. That's all I have. Thank you, counsel. Thank you. We appreciate the briefs and arguments. Counsel will take the case under review.